**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **ANTONIO LUNA,** | § | |
| Plaintiff, | § | |
| v. | § | No. 3:09-CV-1436-M-BH |
| | § | |
| **MICHAEL ASTRUE, Commissioner of** | § | |
| **the Social Security Administration,** | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order No. 3-251*, this case was automatically referred for proposed findings of fact and recommendation for disposition. Before the Court are *Plaintiff's Motion for Summary Judgment* (doc. 17), filed October 9, 2009, and *Commissioner's Motion for Summary Judgment* (doc. 20), filed November 10, 2009. Based on the relevant filings, evidence, and applicable law, the Court recommends that *Plaintiff's Motion for Summary Judgment* be **GRANTED**, *Commissioner's Motion for Summary Judgment* be **DENIED**, and the case be remanded to the Commissioner for further proceedings.

**I. BACKGROUND**[1]

**A. Procedural History**

Antonio Luna ("Plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying his claims for disability and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 423(d)(1)(A), 1382. On July 28, 2006, Plaintiff applied for benefits. (Tr. at 78-79, 122-24, 127-32.) He claimed he has been disabled since January 1, 2005, due to back problems secondary to two surgeries and resulting arthritis, attention deficit disorder ("ADD"), a prior heart attack, and memory and concentration

---

[1] The background information comes from the transcript of the administrative proceedings, which is designated as "Tr."

difficulties. (Tr. at 146.) The Social Security Administration denied Plaintiff's application initially and upon reconsideration. (Tr. at 18.) A hearing before an Administrative Law Judge ("ALJ") was held on May 28, 2008. (Tr. at 30-77.) In a written decision, the ALJ found Plaintiff not disabled. (*See* Tr. at 18-29.) The Appeals Council accepted new evidence not presented to the ALJ but found no reason to review the ALJ's decision and denied Plaintiff's request for review. (Tr. at 1, 3.) Consequently, the ALJ's decision is the final decision of the Commissioner. (*Id.* at 1.) Plaintiff appealed the Commissioner's decision to this Court pursuant to 42 U.S.C. § 405(g) on August 3, 2009.

**B. Factual History**

    **1. Age, Education, and Work Experience**

Plaintiff was born in August 1957, and has a seventh grade special education. (*See* Tr. at 39-40; 266.) His past relevant work experience includes delivery driver, furniture mover, and food service worker. (Tr. at 62-63, 147.)

    **2. Medical, Psychological, and Psychiatric Evidence**

Plaintiff's records from Telecare Mental Health Services from 2003 reveal major depressive disorder, alcohol abuse, and chronic pancreatitis. (*See* Tr. at 203-12.) Prison medical records from December 2004 to June 2006 reveal a history of heart attack, stroke, back surgery, substance abuse, and depression. (*See* Tr. at 213-46.) As a prisoner, Plaintiff was prescribed medication for depression and back pain. (*See* Tr. at 222, 225, 235, 240.) Upon release from prison, he sought medication for depression from Dallas Metrocare Services ("DMS"). (Tr. at 247-54.)

At a consultative examination in November 2006, Narendra A. Patel, M.D., diagnosed degenerative disc and joint disease of the lumbar spine, chronic back pain, degenerative joint disease

of right knee, hypertensive cardiovascular disease ("HCVD"), and substance abuse. (Tr. at 259.) Following a mental status examination later in November 2006, Gerald H. Stephenson, Ph. D., diagnosed a mood disorder with current depression, alcohol dependence, history of cocaine abuse in long-time remission, "typical borderline personality traits", borderline or lower current functional mental ability, and "significant impairments of social and vocational behaviors." (Tr. at 263-69.) At that time, Plaintiff's prognosis was guarded, and Dr. Stephenson noted that Plaintiff's "general mental ability may be too low to support retraining for tasks other than those requiring large muscle effort." (Tr. at 269.)

Robert Gilliland, M.D., completed a "Psychiatric Review Technique" and a "Mental Residual Functional Capacity Assessment" for Plaintiff on November 29, 2006. (Tr. at 270-87.) He found that Plaintiff suffered from a major depressive disorder and a substance addiction disorder. (Tr. at 273, 278.) These mental impairments moderately limited Plaintiff in some respects, including his abilities to understand, remember, and carry out detailed instructions, maintain extended attention and concentration, complete a normal workday or workweek, socially interact in the work setting, and adapt to changes in a work setting. (Tr. at 284-85.) Dr. Gilliland concluded that Plaintiff "can understand, remember, and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions, [and] respond appropriately to changes in routine work setting." (Tr. at 286.)

The next day, Terry Collier, M.D., completed a "Physical Residual Functional Capacity Assessment" for Plaintiff. (Tr. at 288-95.) His primary diagnosis was degenerative joint disease with a secondary diagnosis of chronic back pain syndrome. (Tr. at 288.) He concluded that Plaintiff had some exertional limitations based upon his allegations of back problems, ADD, and minor heart

3

attack and stroke, but he found no other physical limitations and specifically noted that Plaintiff's "[a]llegations [were] not fully supported by evidence in file." (Tr. at 289, 293.)

In December 2006, Plaintiff returned to DMS for medication and counseling for depression. (Tr. at 297-310.) On March 15, 2007, Gary Watkins, APN FNP-C,[2] noted that Plaintiff's depression would prevent him from working for six months. (Tr. at 313-14.) The next month, DMS sent a medication list to the Dallas County Jail where Plaintiff was being detained. (Tr. at 314.) Prison medical records from October 2007 through March 2008 show continued treatment for depression and pain. (Tr. at 328-32, 339, 345, 348-49, 352, 361-63, 370-74, 386, 389-90, 410.)

Plaintiff returned to DMS in April 2008, and Nurse Watkins noted that Plaintiff was disabled by his depressive disorder, but that the disability was not expected to last more than six months. (Tr. at 429, 571-76.) On June 4, 2008, Plaintiff visited DMS with significant suicidal/homicidal thoughts and was referred to Green Oaks Hospital. (Tr. at 564-70.) The next day, Plaintiff voluntarily admitted himself to Green Oaks Hospital for major depressive disorder and alcohol withdrawal. (Tr. at 431-34.) His discharge diagnosis on June 9, 2008, included "Major depressive disorder, recurrent, severe" and "Alcohol dependence". (Tr. at 441, 468.) Following his discharge, he received counseling and medication from DMS for a brief period. (Tr. at 555-63.)

Between January 14 and 20, 2009, Plaintiff was admitted to Timberlawn Mental Health System ("Timberlawn"). (Tr. at 578.) Inpatient psychiatric hospitalization was medically necessary because of suicidal thoughts and the presence of a "mental disorder causing major disability in social, interpersonal, occupational, and/or educational functioning, and that can only be addressed by an acute inpatient setting." (Tr. at 594.) He was discharged to Terrell State Hospital ("Terrell")

---

[2] "APN" denotes an "advanced practice nurse", and "FNP-C" denotes a "certified family nurse practitioner".

4

with a primary diagnosis of "Major depressive disorder, recurrent, severe with psychotic features." (Tr. at 580.) Upon admission to Terrell, Plaintiff had a good prognosis and was projected to stay hospitalized for less than a week. (Tr. at 684.) His intellectual functioning and IQ were estimated to be average. (Tr. at 686, 710.) The notes reflected that Plaintiff had no educational barriers to learning or treatment. (Tr. at 710.) He was discharged from Terrell on February 12, 2009, with a primary diagnosis of bipolar disorder with psychotic features and alcohol dependence. (Tr. at 676.)

### 3. Hearing Testimony

At the hearing before the ALJ, Plaintiff appeared in person and through his attorney. (Tr. at 30.) Plaintiff and a vocational expert testified at the hearing. (Tr. at 30-77.)

#### a. *Plaintiff's Testimony*

Plaintiff testified that he could not work as a mover because of his back injury. (Tr. at 44.) He could use public transportation but had some difficulty with the bus system because of forgetfulness. (Tr. at 47-48.) He did not get along with people well and thought they were after him all the time. (Tr. at 48.) Medication controlled his anger, but he had memory problems and suicidal thoughts. (Tr. at 48-54.) He drank and panhandled to support his drinking habit. (Tr. at 61.)

#### b. *Vocational Expert Testimony*

Russell Balden, a vocational expert ("VE"), also testified at the hearing. (Tr. at 61-77.) He characterized the driver and food services positions as semiskilled, light work, and the furniture mover position as unskilled, heavy work. (Tr. at 62-63.) He testified that a person who had the limitations set out by the agency medical consultants, Dr. Gilliland and Dr. Collier, would be able to perform Plaintiff's past relevant work as a driver or food service worker. (Tr. at 63-65.) Even considering Plaintiff's age and education, there were a significant number of light, unskilled jobs

5

that existed nationally and locally that could be performed by a person with the limitations recognized by the agency consultants. (Tr. at 65-67.)

C. **ALJ's Findings**

The ALJ denied Plaintiff's applications for benefits by written opinion issued on October 29, 2008. (Tr. at 18-29.) He found that Plaintiff had not engaged in substantial gainful activity since January 1, 2005, the alleged date of onset of disability. (Tr. at 20-21.) He next reviewed the medical record submitted to him,[3] and he found that Plaintiff suffered from severe impairments, including degenerative joint and disc disease, depressive disorder, and history of alcohol abuse. (Tr. at 21-25.) Despite those severe impairments, he found no impairment or combination of impairments that satisfied the criteria of any impairment listed in the social security regulations. (Tr. at 25-26.)

In determining Plaintiff's residual functional capacity ("RFC"), the ALJ recognized that Plaintiff's "medically determinable impairments could reasonably be expected to produce some degree of symptomatology", but he found Plaintiff not credible with respect to the "intensity, persistence, and limiting effects" of his symptoms. (Tr. at 27.) Regarding Plaintiff's depression, the ALJ found:

> It is clear that absent alcohol use, the claimant's depression is not severe enough to prevent him from understanding, remembering and carrying out detailed but not complex instructions, making decisions, attending and concentrating for extended periods, accepting instructions and responding appropriately to changes in a routine work setting.

(Tr. at 28.) After considering all symptoms to the extent reasonably consistent with the objective medical evidence, the ALJ concluded that Plaintiff retained the RFC to perform a full range of

---

[3] The records from Timberlawn and Terrell were not considered by the ALJ because they were first presented to the appeals council. (*See* Tr. at 1.)

medium work except that he must avoid complex tasks. (Tr. at 26.) He accorded great weight to the opinions of the agency medical consultants, Dr. Gilliland and Dr. Collier, because he found them well-supported and not inconsistent with other substantial evidence. (Tr. at 28.)

The ALJ considered Plaintiff's RFC and testimony from the VE to conclude that he retained the ability to perform his past relevant work as a driver and food service worker. (Tr. at 28-29.)

## II. ANALYSIS

### A. Legal Standards

#### 1. Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759

F.2d 432, 435 n.1 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See id*. Thus, the Court may rely on decisions in both areas without distinction in reviewing an ALJ's decision. *See id*. at 436 & n.1.

### 2. Disability Determination

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563-64. The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony*, 954 F.2d at 292.

The Commissioner utilizes a sequential five-step analysis to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at Step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

**B. Issues for Review**

Plaintiff presents the following issues for review:

(1) the ALJ applied an improper legal standard to evaluate Plaintiff's severe impairments;

(2) the ALJ failed to consider the vocational significance of all severe impairments; and

(3) the ALJ failed to consider all non-exertional impairments.

(P. Br. at 1.)

**C. Issue One: Severe Impairments**

Plaintiff contends that the ALJ erred in not properly considering all of his severe impairments at Step 2 of the evaluative process because the ALJ applied an improper standard of severity. (P. Br. at 12-13.)

9

Pursuant to the Commissioner's regulations, a severe impairment is "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The Fifth Circuit has held that a literal application of these regulations would be inconsistent with the Social Security Act because they include fewer conditions than indicated by the statute. *Stone v. Heckler*, 752 F.2d 1099, 1104-05 (5th Cir. 1985). Accordingly, in the Fifth Circuit, an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." *Id*. at 1101. Additionally, the determination of severity may not be "made without regard to the individual's ability to perform substantial gainful activity." *Id*. at 1104.

To ensure that the regulatory standard for severity does not limit a claimant's rights, the Fifth Circuit held in *Stone* that it would assume that the "ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) (1984) is used." *Id*. at 1106; *accord Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000); *Eisenbach v. Apfel*, 2001 WL 1041806, at *6 (N.D. Tex. Aug. 29, 2001) (Boyle, Mag.). Notwithstanding this presumption, the Court must look beyond the use of "magic words" and determine whether the ALJ applied the correct severity standard. *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986). Unless the correct standard of severity is used, the claim must be remanded to the Secretary for reconsideration. *Stone*, 752 F.2d at 1106.

Here, the ALJ stated that "an impairment or combination of impairments is severe within the meaning of the regulations if it significantly limits an individual's ability to perform basic work

activities." (Tr. at 19) (citing 20 C.F.R. § 404.1520(c)). He further stated that "an impairment or combination of impairments is 'not severe' when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work." (Tr. at 19) (citing 20 C.F.R. §§ 404.1521 and 416.921 and Social Security Rulings ("SSRs") 85-28, 96-3p, and 96-4p). These statements are inconsistent with the *Stone* holding that an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." 752 F.2d at 1104-05. Unlike the ALJ's standard, *Stone* provides no allowance for a minimal interference on a claimant's ability to work. While the difference between the two statements appears slight, it is clear that the ALJ's construction is not an express statement of the *Stone* standard. This difference, coupled with the ALJ's failure to cite *Stone* or a similar opinion,[4] leads the Court to conclude that the ALJ applied an incorrect standard of severity.

The ALJ's narrative discussion supports this conclusion with respect to Plaintiff's alleged mental impairment. The ALJ noted that Plaintiff had been in special education in school, that he dropped out in seventh grade, and that he had difficulty with attention and short-term and long-term memory. (Tr. at 23, 24.) However, the record does not reflect consideration of Dr. Stephenson's opinions that Plaintiff suffered from borderline or lower functional mental ability, that Plaintiff's "general mental ability may be too low for tasks other than those which require large muscle effort" and that he required assistance to manage his affairs and funds. (Tr. at 269.) For this reason, the

---

[4] The Commissioner, citing *Barfield v. Barnhart*, 285 F. Supp. 2d 827 (S.D. Tex. 2002), argues that SSR 85-28 qualifies as an authority of the same effect as *Stone*. (D. Mot. at 15.) Although *Barfield* states that SSR 85-28 adopted the interpretation of severe impairment set out in *Stone*, a number of cases in this circuit have found the language of SSR 85-28 inconsistent with *Stone*. *See e.g. Ruby v. Astrue*, No. 3:08-CV-1012-B-BF, 2009 WL 4858060, at *8 (N.D. Tex. Dec. 14, 2009; *Scroggins v. Astrue*, 598 F. Supp. 2d 800, 805-06 (N.D. Tex. 2009); *Rangel v. Astrue*, 605 F. Supp. 2d 840, 850-51 (W.D. Tex. 2009).

Court finds that the ALJ applied an incorrect standard of severity at step 2 when he determined Plaintiff's severe mental impairments.

Generally, appeals from administrative agencies of a procedural error will not lead to a vacated judgment "unless the substantial rights of a party have been affected." *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989) (citing *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam)). However, the ALJ's failure to apply the *Stone* standard is a legal error, not a procedural error. The Fifth Circuit left the lower courts no discretion to determine whether such an error is harmless. Rather, the court mandated that "[u]nless the correct standard is used, the claim *must* be remanded to the Secretary for reconsideration." *Stone*, 752 F.2d at 1106 (emphasis added). Because the ALJ applied an incorrect standard of severity at step 2, remand is required.[5] Since remand is required for a step 2 error, the Court does not consider the remaining issues for review.

### III. RECOMMENDATION

*Plaintiff's Motion for Summary Judgment* (doc. 17) should be **GRANTED**, the *Commissioner's Motion for Summary Judgment* (doc. 20) should be **DENIED**, and the decision of the Commissioner should be **REVERSED** and the case **REMANDED** for further proceedings.

**SO RECOMMENDED**, **on this 29th day of January, 2010.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[5] The Commissioner argues that *Stone* does not dictate a remand where, as here, the ALJ does not summarily dismiss the case at step 2 but adjudicates the case at a later step. (D. Mot. at 16.) The Commissioner's contention has been rejected at least twice in this district. *See Bragg v. Comm'r Soc. Sec. Admin.*, 567 F. Supp. 2d 893, 907 (N.D. Tex. June 6, 2008); *Key v. Astrue*, No. 3:06-CV-1087-N, 2007 WL 2781930, at *4 (N.D. Tex. Sept. 4, 2007). Additionally, the Fifth Circuit itself has remanded based on *Stone* even where the ALJ adjudicated the case past step 2. *See Loza v. Apfel*, 219 F.3d 378 (5th Cir. 2000).

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

      A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

13